ZEMEL LAW, LLC
Daniel Zemel, Esquire (Bar No. 111402014)
Nicholas Linker, Esquire (Bar No. 146732015)
660 Broadway
Paterson, New Jersey 07514
Telephone: (862) 227-3106
Facsimile: (973) 282-8603
Email: DZ@zemellawllc.com
Email: NL@zemellawllc.com

and

THE FULLER LAW FIRM, P.C.
Trevor M. Fuller, Esquire
(*Admitted Pro Hac Vice*)
5970 Fairview Road, Suite 450
Charlotte, North Carolina 28210
Telephone: (704) 659-5600
Facsimile: (704) 464-0945
Email: tmfuller@thefullerlawfirm.com

*Attorneys for Plaintiff Anthony Williams*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY WILLIAMS, individually and on behalf of other similarly situated persons,<br><br>                    Plaintiff<br><br>          vs.<br><br>BRISTOL-MYERS SQUIBB COMPANY,<br><br>                    Defendant. | **FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Civil Action No. 2:22-cv-06097-EP-JRA<br><br>Hon. Evelyn Padin<br><br>*Jury Trial Demanded* |

## **INTRODUCTION**

Bristol-Myers Squibb crushed Tony Williams' spirit when it told him that his sincerely held religious beliefs and practices meant nothing. He had been working faithfully for the company for nearly ten years, steadily advancing through the ranks. In requesting a religious accommodation with respect to the company's COVID-19 vaccination mandate, Mr. Williams bared his soul, revealing in writing some of his deepest held principles about his relationship with God and about the way he conducts his very life on this planet. This was momentous and existential for him.

Referring to his sincerely held religious beliefs and practices as merely "asserted," Bristol-Myers Squibb "reviewed" Mr. Williams' confessions of his belief system and dismissed them as not warranting any regard. Indeed, the company mocked Mr. Williams by cherry-picking one sentence from his request for an accommodation to exemplify their contempt for his religious beliefs. The company refused to regard Mr. Williams' religious beliefs and practices and refused to make any accommodation that would allow him to continue to work. To emphasize the point, Bristol-Myers Squibb summarily terminated Mr. Williams' employment.

Many other Bristol-Myers Squibb employees found themselves in the same situation as Mr. Williams. It turns out that Bristol-Myers Squibb perpetrated a

policy, practice or pattern to deny religious accommodation requests with respect to its vaccine mandate, and followed through on this policy, practice, or pattern by denying the majority of all religious accommodation requests. As a result, nearly 700 employees were fired by Bristol-Myers Squibb because of their religious beliefs.

This case is about vindicating Tony Williams' life and the lives of many other former employees, and holding Bristol-Myers Squibb to account for taking away his and their livelihoods.

Accordingly, Plaintiff Anthony Williams ("Mr. Williams"), for himself and on behalf of all other similarly situated persons, by and through his attorneys Zemel Law, LLC, and The Fuller Law Firm, P.C., as and for his first amended class action complaint against Defendant, hereby states and alleges the following, upon information and belief:

## **NATURE OF ACTION**

1. This is a class action for damages arising from Defendant's unlawful religious discrimination against Mr. Williams and all other similarly situated persons.

## PARTIES

2. Plaintiff ANTHONY WILLIAMS is a former employee of Defendant who resides in Jersey City, Hudson County, New Jersey.

3. Defendant BRISTOL-MYERS SQUIBB COMPANY ("BMS") is a corporation existing, operating, and doing business in and under the laws of the State of New Jersey, and was the employer of Mr. Williams and all putative class members. Defendant BMS is domiciled in the State of New Jersey.

## JURISDICTION AND VENUE

4. This Court has obtained jurisdiction over the subject matter and the persons in this action by virtue of BMS' removal of this action from the New Jersey Superior Court under 28 U.S.C. § 1441. Venue is proper in this district under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

5. When the COVID-19 pandemic began in early 2020, it disrupted all of our lives.

6. At first, there was no protection against the virus, no vaccine was available, and there was a nationwide lockdown.

7. In or about late 2020, vaccines were developed that were initially difficult to obtain, and were limited. After a time, two vaccines became viable and were made more available.

8.  Despite the nascent availability of the new vaccines, there arose intense public discussion in opposition to the vaccines for reasons including religious objections.

9.  Defendant was a part of that public discussion, advocating for vaccines to be taken by everyone.

10. By Defendant's admission, it did not impose a vaccine mandate until September 2021, more than a year after vaccines were available and after it was clear that there was significant opposition on religious grounds to taking the vaccine.

11. Indeed, Defendant's motivation for imposing its vaccine mandate in the first place was to achieve 100% (or nearly 100%) vaccination status among its employees, even when it knew that one of the main reasons it did not have 100% status was because of employees' religious objections.

12. As a result, Defendant was categorically predisposed against all religious accommodation requests. Defendant had little intention of approving any religious accommodation requests (but for an exceeding few), and had a plan pretextually to assert that to accommodate any religion-based request would pose an undue hardship on the company (as evidenced by its policy to refuse relief from the vaccine mandate even for employees whose jobs were specifically designated as remote).

13. Although BMS was required to handle all religious accommodation requests on an individualized basis, in fact, BMS did not do so in this case. Instead, BMS adopted and implemented a policy, practice or pattern to deny religious accommodation requests because the company did not believe that there was any legitimate reason, based on religious belief, for any employee not to take the COVID vaccine.

14. It is not surprising, then, that BMS denied the majority of the religious accommodation requests submitted by BMS employees.

15. BMS received more than 1,000 religious accommodation requests.

16. In addition, after announcing its vaccine mandate, it quickly became clear to BMS that the volume of religious accommodation requests made it almost impossible to give true individualized attention to each request in the two-month period between when the mandate was announced (September 2021) and the deadline for taking the vaccine (November 2021).

17. Defendant acted in accordance with a common policy, plan, or practice to deny religious accommodation requests with respect to the company's COVID-19 vaccine mandate.

*The Circumstances of Mr. Williams' Case*

18. Mr. Williams' employment with Defendant began in February 2012, when he was a customer care representative for Celgene Corporation, a predecessor company. When Defendant acquired Celgene in or about November 2019, Mr. Williams thereby became an employee of Defendant as a U.S. Distribution Analyst.

19. In late 2021, Mr. Williams was told by his supervisors that he had completed all necessary work goals and expectations for promotion and that he was about to be promoted to the U.S. Distribution Manager position.

20. On September 7, 2021, BMS announced that in response to the COVID-19 pandemic, it would require all of its United States employees to be fully vaccinated by November 1, 2021 or face termination.

21. Shortly thereafter, BMS management began to implement this directive, including the threat of "for cause" termination if employees did not receive COVID-19 vaccinations. BMS purported to allow for an exception to the vaccination directive by appearing to offer a religious exemption to employees.

22. BMS required employees seeking a religious accommodation to submit a completed Religious Accommodation Request Form.

23. The accommodation request form required employees to answer questions such as identifying what policy that they were seeking an exemption from, what their religious beliefs were, how their beliefs conflicted with the policy, the

duration of the requested accommodation, and what accommodation they desired. The request form also required employees to verify that their religious beliefs were sincerely held.

24. Mr. Williams first submitted his request for a religious accommodation to BMS, in accordance with its policy, on September 10, 2021.

25. In his explanatory paperwork, Mr. Williams carefully detailed the basis for his religious exemption request.

26. Since March 2020, when the pandemic first affected the workplace, Mr. Williams had been working remotely effectively and successfully.

27. Mr. Williams requested BMS to accommodate his religious beliefs by allowing him to continue to work remotely.

28. After Mr. Williams submitted the accommodation request form, Defendant then proceeded to interrogate Mr. Williams in writing as to his religious beliefs, demanding the doctrinal basis for his beliefs and requiring Mr. Williams to justify himself. No one from Defendant ever conversed with Mr. Williams directly to ascertain the sincerity of his religious beliefs.

29. Notwithstanding Defendant's intrusive and skeptical questioning, Mr. Williams provided detailed supplemental responses.

30. Mr. Williams explained to Defendant that he has acted consistently with his religious beliefs in other areas of his life.

31. In addition to his sincerely held religious beliefs, Mr. Williams revealed that he also has a sincerely held belief in the power of prayer to God for answers to life's difficult questions. So, as Mr. Williams explained, it is also part of his religious practice to pray to God and be guided by the answers to his prayers.

32. Mr. Williams revealed that he had prayed to God about whether to submit to Defendant's mandated vaccine, and that the answer to his prayer was that he should not take the vaccine.

33. On November 15, 2021, Defendant flatly denied Mr. Williams' request for a religious accommodation. The basis for the denial was the application of Defendant's uniform policies and procedures for denial, as similarly applied to the hundreds of other religious exemption applicants. Thereafter, Defendant repeatedly rejected Mr. Williams' multiple attempts to obtain reconsideration of this denial.

34. In so doing, Defendant ignored Mr. Williams' requested accommodation, which was to be allowed to continue working remotely -- just as he had done successfully and effectively for more than a year and a half. Defendant carefully did not claim that Mr. Williams continuing to work remotely would pose an undue hardship.

35. BMS' November 15 denial letter further noted that the decision was final and mandated that Mr. Williams receive a COVID-19 vaccination and provide proof thereof by November 29, 2021 or face termination on December 6, 2021.

36. On December 6, 2021, Defendant terminated Mr. Williams' employment and the employment of all other Class members based on the uniform application of policies and procedures which violated each class members rights.

## **CLASS ACTION ALLEGATIONS**

### **The Class**

37. Mr. Williams brings this as a class action pursuant to New Jersey Court Rule 4:32 (now, because of removal, pursuant to Rule 23 of the Federal Rules of Civil Procedure) for himself and on behalf of all other similarly situated persons (employees) who have been subjected to the uniform policy, practice or pattern of religious discrimination perpetuated by Defendant, in violation of the New Jersey Law Against Discrimination.

38. The "Class" is defined as follows:

> **All employees of Defendant who requested religious accommodation or exemption from Defendant's COVID-19 vaccination policy and whose requests were delayed, denied, refused, or dismissed.**

39. Excluded from the Class is Defendant herein, and any person, firm, trust, corporation, or other entity related to or affiliated with Defendant, including, without limitation, persons who are officers, directors, associates or partners of Defendant.

## Numerosity

40. Upon information and belief, Defendant has discriminated against nearly 700 of its employees by subjecting them to the same policy, practice, and pattern of denying their religious accommodation requests.

41. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

42. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

## Common Questions of Law and Fact

43. This case involves questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.

44. Rather than handling religious accommodation requests on an individualized basis, Defendant implemented an overall policy, practice, and pattern of denying religious accommodation requests (except for a few) submitted by its employees.

45. Common questions of law and fact include, but are not limited to, whether the implementation of Defendant's policy, practice and pattern to deny religious accommodation requests constituted violations of the New Jersey Law Against Discrimination. Further, it is also a common question to resolve what is the

appropriate calculus for compensation for victims of said unlawful conduct by Defendant.

### Typicality

46. Mr. Williams' claims are typical of the claims of the Class, and Mr. Williams has no interests adverse or antagonistic to the interests of other members of the Class.

### Protecting the Interests of the Class Members

47. Mr. Williams will fairly and adequately represent the Class members' interests, in that Mr. Williams' attorneys are experienced class action and employment law counsel who anticipate no impediments to the vigorous pursuit and maintenance of the class action as sought herein.

### Proceeding Via Class Action is Superior and Advisable

48. A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted.

49. The members of the Class are individuals who are generally unsophisticated about complicated legal matters like this, and whose rights will not adequately be vindicated in the absence of a class action.

50. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications, resulting in the establishment of inconsistent or varying standards for the parties.

51. A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

52. Absent a class action, the Class members will continue to suffer losses borne from Defendant's violations of Class members' statutorily protected rights, as well as declaratory, injunctive, and monetary damages, thus allowing and enabling Defendant to: (a) escape a reckoning for its unlawful conduct; (b) enjoy the benefit of its ill-gotten gains; and (c) avoid the costs and expenses of having provided reasonable religious accommodations.

## CAUSES OF ACTION

### COUNT I

[*Violations of New Jersey Law Against Discrimination ("LAD") – Religious Discrimination, Failure to Accommodate, Failure to Promote, and Retaliation*]
**N.J.S.A. § 10:5-1, et seq.**

53. Mr. Williams repeats and realleges paragraphs 1-52 of this First Amended Class Action Complaint, as if fully set forth and incorporated herein.

54. During all times relevant to this cause of action, Defendant is a "person"

and "employer" as those terms are defined under the LAD, N.J.S.A. §§ 10:5-5(a) and (c).

55. During all times relevant to this cause of action, Mr. Williams and each Class member is a "person" and "employee," as those terms are defined under the LAD, N.J.S.A. §§ 10:5-5(a) and (f).

56. The New Jersey Law Against Discrimination requires employers to provide reasonable accommodations to employees who request exemptions from workplace policies on the basis of sincerely held religious beliefs or practices.

57. Mr. Williams and each Class member is a member of a protected class of persons on account of their sincerely held religious beliefs and practices.

58. Mr. Williams and each Class member was performing his or her job at a level that met and exceeded Defendant's legitimate expectations.

59. Mr. Williams and the Class members suffered adverse employment actions in that they were terminated by Defendant on December 6, 2021.

60. Defendant has subjected Mr. Williams and each of the Class members to religious discrimination by subjecting them to differential treatment with respect to the terms and conditions of their employment because of their sincerely held religious beliefs and practices and by unlawfully terminating his and their employment.

61. Defendant denied the religious accommodation requests submitted by

Mr. Williams and each of the Class members in furtherance of a deliberate policy, practice, or pattern.

62. Defendant's discrimination and adverse employment actions against Mr. Williams and the Class members because of their religious beliefs and practices constituted violations of the LAD.

63. Further, Defendant's discriminatory behavior on the basis of religion led to and constituted a failure to accommodate, retaliation against, and a failure to promote Mr. Williams.

64. Defendant engaged in, participated in, condoned, ratified, perpetuated, conspired, incited, coerced, induced, and/or aided and/or abetted the LAD violations.

65. Defendant's acts and/or omissions caused harm to Mr. Williams and the Class members, and Defendant's acts and/or omissions were actuated by actual malice or accompanied by a reckless, wanton and willful disregard of persons who might foreseeably be harmed by those acts and/or omissions.

66. As a direct and proximate result of Defendant's unlawful conduct, Mr. Williams and the Class members have suffered psychological, mental and emotional distress, significant financial losses, and compensatory, consequential, and other damages.

67. Mr. Williams, for himself and on behalf of the Class, seeks relief on this cause of action, as more fully set forth in the Prayer for Relief below.

## COUNT II

### *Declaratory Judgment*

68. Mr. Williams repeats and realleges paragraphs 1-67 of this First Amended Class Action Complaint, as if fully set forth and incorporated herein.

69. Defendant's unlawful conduct against Mr. Williams and the Class members, as set forth herein, presents an actual, justiciable case and controversy under N.J.S.A. § 2A:16-52 and 28 U.S.C. § 2201.

70. Consequently, Mr. Williams and the Class members are entitled to a judicial declaration that Defendant has violated their rights under the NJLAD, and that an injunction should be entered requiring Defendant to comply with the NJLAD with respect to religious accommodation requests.

71. Mr. Williams, for himself and on behalf of other similarly situated person, requests relief on this cause of action consistent with the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Williams, for himself and on behalf of the Class, prays for judgment in his favor and against Defendant on each cause of action herein, and requests the following relief:

A. Entry of an order certifying this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

  B. Entry of a declaratory judgment against Defendant and in favor of Mr. Williams and the Class, finding and declaring that Defendant has violated the New Jersey Law Against Discrimination in denying Mr. Williams' and the Class members' religious accommodation requests;

  C. An award of compensatory damages, including damages for psychological, mental and emotional distress and significant financial losses, including:

    (i) Economic damages for lost wages and benefits;

    (ii) Backpay and benefits;

    (iii) Front pay and benefits;

  D. An award of consequential damages;

  E. An award of pre- and post-judgment interest, together with an award of enhancements to offset negative tax consequences;

  F. An award of equitable relief, including:

    (i) Ordering Defendant to take appropriate corrective action to stop and prevent religious discrimination at the workplace;

    (ii) Ordering Defendant to undergo anti-discrimination training;

    (iii) Ordering Defendant to engage a research organization to assess the effectiveness of its anti-discrimination training; and

    (iv) Ordering Defendant to pay the attorneys' fees and disbursements

        of Plaintiff's counsel to oversee and enforce the equitable remedies identified above;

G. An award of attorneys' fees and the costs and disbursement of this action;

H. An award of punitive damages; and

I. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues in this action.

Dated: April 10, 2023

Respectfully submitted,

/s/ Daniel Zemel
Daniel Zemel, Esquire
Nicholas Linker, Esquire

ZEMEL LAW, LLC
660 Broadway
Paterson, New Jersey 07514
Telephone: (862) 227-3106
Facsimile: (973) 282-8603
Email: DZ@zemellawllc.com
Email: NL@zemellawllc.com

THE FULLER LAW FIRM, P.C.
Trevor M. Fuller, Esquire
(*admitted pro hac vice*)
5970 Fairview Road, Suite 450
Charlotte, North Carolina 28210
Telephone: (704) 659-5600
Email: tmfuller@thefullerlawfirm.com

*Attorneys for Plaintiff*